IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA LYNN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:16-cv-231-TFM |
| | ) | [wo] |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Following administrative denial of her application for Supplemental Security Income benefits under Title XVI of the Social Security Act, Angela Lynn Brown ("Brown" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying supplemental security income benefits.

**I. NATURE OF THE CASE**

Brown seeks judicial review of the Commissioner of Social Security Administration's decision denying her application for supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405, 42 U.S.C. § 1383. The court may affirm, reverse and remand with instructions, or reverse and render a

judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Hargress v. Soc. Sec. Admin.*, --- F.3d ---, n. 2, 2017 U.S. App. LEXIS 22103, 2017 WL 5077522 (11th Cir. Nov. 6, 2017); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the

Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] However, despite the fact they are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a

claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[3] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual.

---

[3] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

*Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Brown brought a disability claim because of kidney disease, renal failure, and hypertension. (R. 50, 64, 109, 155). Following initial administrative denial of her claim, Brown requested a hearing before an administrative law judge ("ALJ") (R. 59, 64-68). ALJ Vincent P. Intoccia ("the ALJ") convened an evidentiary hearing on April 2, 2014. (R. 31-48). Brown and her representative attended the hearing. The ALJ received direct testimony from Brown and Michael Mclean, a Vocational Expert ("VE"). The remaining evidentiary record consisted of medical reports from treating sources and residual functional capacity assessments completed by a medical consultant[4] who reviewed medical records upon request of Alabama Disability Determination Services and a disability examiner. The ALJ rendered an unfavorable verdict on July 18, 2014. (R. 15-26). On February 12, 2016, the Appeals Council denied Brown's request for review (R. 1-3). This Social Security Appeal was filed on April 5, 2016. *See* Doc. 1, Complaint.

---

[4] Robert Estock, M.D., (R. 49-58). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a).

## V. ADMINISTRATIVE DECISION

Employing the five step process, the ALJ found that Brown has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2);[5] the impairments, considered individually and in combination, do meet or equal in severity any impairment set forth in the listings (Step 3); Brown has no past relevant work (Step 4); and a significant number of jobs are available in the national economy which Brown could perform with her residual functional capacity (Step 5). (R. 15-26).

The ALJ utilized Vocational Expert (VE) testimony which indicates Brown can perform work available in the national economy with the limitations which beset Brown. (R. 42-47).

## VI. ISSUES

Brown raises four issues on appeal:

(1) Whether the ALJ's finding of Ms. Brown's residual functional capacity is inconsistent with his acceptance of the opinion of Dr. Khdair, rendering either his RFC finding and/or his evaluation of Dr. Khadir's opinion unsupported by substantial evidence.
(2) Whether the ALJ erred by according great weight to the opinion of Dr. Estock, the non-examining reviewing physician.
(3) Whether the ALJ erred by failing to properly consider Ms. Brown's mental allegations.
(4) Whether the ALJ erred by failing to order a consultative examination.

*See* Doc. 12, Plaintiff's brief at p. 1.

## VII. DISCUSSION AND ANALYSIS

The first three issues Brown raises hinge on and are subsumed by the answer as to whether substantial evidence supports the RFC determination. RFC is the most a claimant can still do despite the physical and mental limitations resulting from their impairments. 20 C.F.R. §416.945(a); *Phillips v. Barnhart*, 357 F. 3d 1232, 1238 (11th Cir. 2004). RFC is an assessment

---
[5] The ALJ found the following "severe" impairments: hypertension, edema, chronic renal failure obesity and coronary artery disease. (R. 20).

by the ALJ drawn from the record evidence. 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3). Brown argues three ways in which she believes the ALJ was deficient in his RFC assessment

First, Brown argues the ALJ erred in his RFC finding that Brown can perform sedentary work because the ALJ gave great weight to the opinion of Dr. Khdair, a consultative medical examiner. Dr. Khdair opined that Brown could only sit for ten minutes at a time for a total of two hours in an eight-hour work day. (R. 237). Brown is correct that the two hour sitting limitation is inconsistent with the definition of sedentary work. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. See, 20 CFR § 416.967(a). Social Security Ruling 96-9p indicates that occasionally means the limitation occurs from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8 hour workday. Sitting would generally total about 6 hours of an 8 hour workday. SSR 96-9p. Obviously, the ALJ gave great weight to the opinion of Dr. Khadir but rejected the two hour sitting limitation. The ALJ properly rejected the two hour limitation and the court finds that there is overwhelming evidence to support the choice.

An ALJ may properly reject a medical opinion from treating or examining physicians under much the same circumstances. The regulations give preference to the opinion of the treating physicians. 20 C.F.R. § 404.1527(d)(1)-(2); *Winschel*, 631 F.3d at 1179 ("Absent good cause, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.") (internal citations and quotations omitted); *see also Hargress*, --- F.3d at ---; 2017 U.S. App. LEXIS 22103 at *6-7, 2017 WL 5077522 at *2 (citing *Winschel*). However, "the ALJ has the discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician…[but] if he follows that course of action, he must show 'good cause' for his decision." *Gholston v. Barnhart*, 347

F.Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Phillips*, 357 F.3d at 1240 (quoting *Lewis,* 125 F.3d at 1440 (The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). In other words, the Eleventh Circuit has found good cause for discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)). Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records[.]" *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440).

However, Dr. Khdair was not a treating physician. He was a non-treating, examining physician. The opinion of a non-treating, examining physician is not entitled to the same deference as a treating physician. See 20 C.F.R. § 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Likewise, an ALJ may reject the opinion of an examining physician such as Dr. Khdair. *See Crawford* 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The medical record before the ALJ indicates Dr. Khdair's sitting limitations are not supported by the record. Indeed, the only discernable reason for Dr. Khdair to impose a sitting limitation on Brown is her self-serving claim that she must sit at various intervals. Nonetheless, the objective medical record not only fails to support the extensive sitting limitation, the medical record contradicts the extensiveness of the sitting limitation Dr. Khdair imposes on Brown.

Brown claims she needs to sit at times because of back pain. (R. 234). The objective findings from Brown's examination by Dr. Khdair indicates Brown had no tenderness along her spine, back spasms, or deformity. (R. 234). In addition, Dr. Khdair noted that Brown can squat, heel walk, toe walk, and walks without a cane or other assistive device. (R. 234). Dr. Khdair noted after his examination of Brown: " In conclusion, I would like to make a statement based on my medical findings expressing my opinion about the claimant's ability. I believe the patient is able to do work related activities such as sitting, standing and walking. Her hearing and speaking are intact. She may have limitations because of her chronic renal failure. The patient was advised to follow up with her nephrologist in order to control her blood pressure." (R.235) The court finds the objective medical evidence found by Dr. Khdair is at odds with the extent of his sitting limitation.

Next, records from treating sources, sources whom the ALJ must defer to absent good cause, indicate that Brown's claim that she must sit from time to time because of back pain are not credible. (R. 211, 229, 234, 257, 287, 295, 299, 303, 307). Several records from treating physicians indicate: "Back: The examination of the back reveals the C spine shows no abnormal curvatures, is non-tender and had full ROM. The T spine shows no abnormal curvatures and no point tenderness. The L spine shows no abnormal curvatures, no point tenderness. The sacrum shows no deformities and no point tenderness. The coccyx is non- tender. The SI joints show a full ROM without point tenderness."  (R. 230, 288, 292, 296, 300, 304, 308).

Finally, one would expect that if Brown had back pain to the extent such would be debilitating, Brown would have sought back related medical treatment. There are no medical records which indicate she sought treatment for back related issues and her activities of daily living are not consistent with debilitating back pain. Ultimately, while Dr. Khdair may offer an

opinion, the final responsibility for assessing RFC belongs to the ALJ who considers the record as a whole. *Castle v. Colvin*, 557 Fed. Appx. 849, 853-54 (11th Cir. 2014). Finally and alternatively, to the extent that the ALJ did not adequately articulate the basis for rejecting the sitting recommendations made by Dr. Khdair, the error was harmless. Harmless error occurs when the correct application of appropriate regulation would not contradict the ALJ's ultimate findings. *Caldwell v. Barnhart*, 261 Fed. Appx. 188, 190 (11th Cir. 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Next, Brown argues the ALJ erred in his RFC assessment by giving great weight to the opinion of Dr. Estock, a non-examining, reviewing physician who concludes Brown had no mental medically determinable impairments. (R. 24). Brown argues that Dr. Estock did not have certain records about Brown's intellectual deficiencies thus the ALJ should not accord any weight, much less great weight, to the opinion of Dr. Estock. Dr. Estock's report states: "Claimant alleges she was in special ed during school. No records were recd and the Claimant has HX of SGA Earnings. She does not note any problems/limitation on ADLS related to a mental DO and is not seeking TX or being TX for a mental DO. Claimant has no MDI." (R. 53)

The Court agrees with the RFC as found by the ALJ, even to the extent that it relies upon the opinion of Dr. Estock. Several key pieces of evidence support the opinion of Dr. Estock and the reliance of the ALJ thereon. First, Brown showed no colorable claim of mental impairment. *See Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005). At the hearing, the ALJ and Brown engaged in the following colloquy: "ALJ: What's the biggest issue that you see, Ms. Brown, that would keep you from working eight hours a day, five days a week, a regular job? Ms. Brown: My heart issues and I can only pick up stuff that's under 10 pounds." (R. 40). While the exchange between the ALJ and Brown did include other matters, it is clear the hearing before the

ALJ on April 2, 2014 was well after the opinion of Dr. Estock on November 16, 2012. (R 31, 54). If mental impairments were a colorable part of the claim, Brown and her representative could have presented proof of her mental impairments and the colloquy may have been much different. Plaintiff's representative accepted the offer by the ALJ to give an opening statement and said: "My client is only 33 years old and she is a younger individual. The record says she has a 12 grade education, which is wrong. She was in special ed beginning in seventh grade and took the exit exam in 11th grade and failed and she did not take it again. She only has a certificate from high school. The moral of her case is she has suffered with headaches for so long and she took goody powders and Ibuprofen for years and years and years and now she in Stage IV renal failure, malignant hypertension, and recently just had a heart attack in January, 2014. So she is in pretty bad shape and she's dependent on taking medicine and the doctors are trying to really teach her what's wrong with her and how to take care of herself." (R. 34-35). In sum, the Court finds the claim at bar rises or falls upon the evidence related to her physical symptoms as there was no colorable showing of debilitating mental issues such as decompensation. In fact, Brown's activities of daily living indicate she has no colorable claim of mental impairment. By her own admission, Brown helps her children (ages 14, 9, and 7 at the hearing) with their homework, prepares meals, drives, shops, pays bills, can count change, handle a savings account and use a checkbook/money orders. (R. 35, 163-165). Brown did not allege any mental impairment in her function report. (R. 163-169). Another telling piece of evidence came directly from Brown. In her application for benefits, Brown was asked to list all of the physical or mental conditions (including emotional or learning problems) that limit her ability to work. Brown responded, "Kidney failure, renal disease and hbp" (R. 155). Later, in the same form, Brown was asked, "Please explain why you stopped working (for example: laid

off, early retirement, seasonal work ended, business closed). Brown responded, "youngest child had a medical condition and I stopped working to care for her." (R. 155). As a whole, the entire record before the ALJ did not disclose a colorable claim of mental impairment. The fact Dr. Estock also reached the determination does not prohibit the ALJ from also doing so. *See Forrester v. Comm'r of Soc. Sec.*, 455 Fed. Appx. 899, 902-03 (11th Cir. 2012).

Brown argues the ALJ erred by not ordering a psychological examination. Again, the Court determines that Brown did not raise a colorable claim of mental impairment. To the extent the ALJ had records about Brown *vis a vis* her mental condition the ALJ had an adequate record to decide Brown is not disabled under the Act. Brown's arguments rest on the fact that she told the ALJ she was in special education classes, reported that gets mixed up with changes in routine, she was never able to pass the math or language sections of the high school exit exam, and Brown gave the ALJ the results of her Stanford test of Academic Skills with the Otis-Lennon School Abilities Test. (R136, 168, 187).

The regulations do not mandate that the ALJ order an examination in this situation. When an adjudicator cannot reach a conclusion, or needs more information to make a decision as to disability, the regulations allow the ALJ to order a consultative examination. 20 C.F.R. § 416.920b(c)(1), and (c)(3); *Holladay v. Bowen*, 848 F. 2d 1206, 1210 (11th Cir. 1988). The ALJ was aware of these matters, as well as the opinion of Dr. Estock and the matters already enunciated in this opinion to reach a conclusion that Brown is not disabled on mental health grounds. The Court agrees. Simply put, Brown's disability hinges on her physical condition as there is no colorable claim of mental impairment. Alternatively, to the extent she does allege a colorable impairment claim, the ALJ took those matters into account and no further examination was necessary as there was adequate information in the record to make a decision.

Finally, Brown alleges the ALJ erred by failing to properly consider her mental allegations. Brown essentially argues again she did raise a colorable claim of mental impairment. For the reasons set out above, the Court finds otherwise. The burden ultimately rests with Brown to demonstrate her disability. *Doughty v. Apfel*, 245 F.3d 1274, 1276 (11th Cir. 2001). The Court concludes Brown did not meet her burden, the ALJ properly evaluated the evidence, and substantial evidence supports the Commissioner's finding that Brown is not disabled under the Act and its attendant regulations.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence and no legal error was committed. It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED. A separate judgment is entered herewith.

DONE this 13th day of November, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE